Rel: February 27, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0269

_____

**Alabama Department of Human Resources**

**v.**

**Eternal Life Learning Center, Kimmi McKinstry, and Prince Etta Dunning**

**Appeal from Jefferson Circuit Court**
**(CV-24-901554)**

BOWDEN, Judge.

The Alabama Department of Human Resources ("ADHR") appeals the March 4, 2025, judgment of the Jefferson Circuit Court reversing the March 13, 2024, order of an administrative-law judge ("the ALJ") upholding the September 26, 2023, final decision of ADHR ("the final

decision") that terminated Eternal Life Learning Center ("Eternal Life") from participation in the Child Care Subsidy Program. ADHR argues on appeal that its interpretation of the "90-day rule" is reasonable and supports the final decision. We agree. Accordingly, we reverse the circuit court's judgment and remand the cause to the circuit court to enter a judgment affirming the final decision of ADHR.

Background and Procedural History

ADHR granted Eternal Life a license to operate as a child-care facility, and to participate in the Child Care Subsidy Program, in 2019. Eternal Life had previously operated as a church-exempt facility, but it sought licensure when the rules regarding federal funding for unlicensed child-care facilities were changed.

On June 15, 2023, as part of the license-renewal process, Catressa Rozell, a child-care consultant for ADHR, inspected Eternal Life to ensure that the facility complied with ADHR's Health and Safety Guidelines. Ala. Dep't of Hum. Res., Health and Safety Guidelines: Requirements and Procedures for Facilities Participating in the Child Care Subsidy Program, (Sept. 13, 2021), https://dhr.alabama.gov/wp-content/uploads/2021/06/PROPOSED-Blue-Book-Health-and-Safety-

Guidelines-.pdf (https://perma.cc/M9ED-MDDS) (last visited Feb. 23, 2026). Rozell identified 42 "deficiencies" at Eternal Life during that inspection. See Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-20-.02(2) (defining "deficiency" as "non-compliance with [ADHR's] Health and Safety Guidelines"). During that inspection, Rozell met with Prince Etta Dunning, who is Eternal Life's "sole owner and staff member employee," to address the 42 deficiencies and discuss how to bring Eternal Life into compliance with ADHR's Health and Safety Guidelines.

Rozell made a follow-up visit to Eternal Life on June 28, 2023. Rozell cited five deficiencies, and Eternal Life remained noncompliant with ADHR's Health and Safety Guidelines at that time.

Rozell inspected Eternal Life again on July 21, 2023, citing three deficiencies. Eternal Life remained noncompliant with ADHR's Health and Safety Guidelines at that time.

Rozell made a follow-up visit to Eternal Life on August 11, 2023, and cited three deficiencies. One of the deficiencies related to an "indicated" finding of child abuse/neglect regarding Dunning based on a report dated April 26, 1988. Because of the three deficiencies, Eternal Life remained noncompliant with ADHR's Health and Safety Guidelines.

Rozell inspected Eternal Life again on September 14, 2023, and was joined by Tonya Swanner, Program Manager for ADHR's Child Care Licensing Division. Swanner and Rozell met with Kimmi McKinstry -- Eternal Life's "Director and Staff member employee" -- to address Dunning's "indicated" disposition and gave McKinstry the option of becoming the licensee for Eternal Life to resolve that deficiency. Rozell cited a total of nine deficiencies at Eternal Life on that visit; three were corrected at the time of that visit, but six deficiencies were not corrected. Because of the remaining deficiencies, Eternal Life continued to be noncompliant with ADHR's Health and Safety Guidelines.

On September 26, 2023 -- 90 days after Rozell's initial inspection of Eternal Life -- ADHR issued a final decision to terminate Eternal Life from the Child Care Subsidy Program.[1] The final decision stated the following:

> "The registration to participate in the Child Care Subsidy Program for the above-named facility is TERMINATED effective October 11, 2023. The statutory and regulatory authority for the TERMINATION is found in the Child Care and Development Block Grant Act (42 U.S.C.S. §§

---

[1]Rozell continued to work with Eternal Life after the final decision. She made a follow-up visit to Eternal Life on November 3, 2023, noting two deficiencies, and on January 23, 2024, noting eight deficiencies.

9857 et seq.) and in the Administrative Code, Section 660-5-20.

"This TERMINATION is necessary and based on the following violation(s):

"According to the Health and Safety Guidelines, Section I, B, 3,

"'The facility shall be ineligible to participate in the Child Care Subsidy Program if any violation of any of these Guidelines (deficiency) is not corrected within ninety (90) days of the discovery of the deficiency. <u>This decision is a result of your failure to resolve the deficiencies cited herein within the 90-day period</u>. [ADHR]'s representative inspected your site on the following dates: 6/15/2023, 6/28/2023, 7/21/2023, 8/11/2023, and 9/14/2023. Upon the final inspection dated 9/14/2023[,] the outstanding deficiencies were not addressed. It is therefore [ADHR]'s decision to terminate your participation in the subsidy program. In such instances the facility will remain ineligible to participate until such time that no deficiencies exist as verified by [ADHR]'s representative.'

"You have the right to request a fair hearing in response to this action. The Provider Request for a Fair Hearing form is included with this notice. Requests for hearings must be made in writing to your local Child Care Management Agency (CMA) by you or your legal representative within 60 days of the action. Your CMA is Child Care Central [address and phone number omitted].

"Should you have any questions contact Ingrid Blocker, Program Specialist, Office of Child Care Subsidy [phone number omitted]."

(Capitalization in original; emphasis added.)

On October 3, 2023, pursuant to § 44-22-12, Ala. Code 1975, McKinstry requested an administrative hearing before the ALJ of ADHR's final decision on behalf of Eternal Life.[2] The ALJ held hearings on December 11, 2023, and February 21, 2024.

On March 13, 2024, the ALJ entered an order, in pertinent part, that affirmed the final decision of ADHR to terminate Eternal Life's participation in the Child Care Subsidy Program. The ALJ made the following findings of fact and conclusions of law:

> "[ADHR] established by a preponderance of the evidence that the decision to terminate [Eternal Life] from participation in the Child Care Subsidy Program should be upheld. According to [ADHR's] Child Care Subsidy Program Policies and Procedures Manual, a facility shall be ineligible to participate in the Child Care Subsidy Program if any violation of any of these Guidelines (deficiency) is not corrected within ninety (90) days of the discovery of the

---

[2]An administrative hearing was later requested regarding the child abuse/neglect report regarding Dunning. When that report was made in 1988, there was no process to challenge an "indicated" finding. See Ala. Code 1975, § 26-14-7.1. However, ADHR agreed to provide an administrative hearing to Dunning.

The ALJ combined Dunning's hearing and the hearing on ADHR's final decision to terminate Eternal Life from participation in the Child Care Subsidy Program. ADHR temporarily reinstated Eternal Life's participation in the Child Care Subsidy Program on December 19, 2023, pending the disposition of both matters.

6

deficiency. ... [T]he evidence clearly shows that [ADHR]'s representative inspected the facility on 6/15/2023. 6/28/2023, 7/21/2023, 8/11/2023, and 9/14/2023 and discovered ongoing deficiencies. Furthermore, [ADHR] established that deficiencies remained after the ninety (90) day time period.

"Therefore ... [ADHR]'s decision to terminate [Eternal Life] from participation in the Child Care Subsidy Program is affirmed."[3]

Eternal Life, McKinstry, and Dunning ("the Eternal Life parties") mailed a notice of appeal to ADHR on March 20, 2024. See Ala. Code 1975, § 41-22-20(d) ("The notice of appeal or review shall be filed within 30 days after the receipt of the notice of or other service of [the ALJ's] final decision ... upon the petitioner ...."). On April 16, 2024, the Eternal Life parties timely filed a pleading in the Jefferson Circuit Court titled "petition for judicial review of [the ALJ's] final decision, complaint for damages under state law Ala. Const., 1901 Art. I, § 13 and an action pursuant to 42 USC § 1983." See § 41-22-20(d) ("The petition for judicial review in the circuit court shall be filed within 30 days after the filing of the notice of appeal or review."). The Eternal Life parties petitioned the circuit court, among other things, to reverse the ALJ's order upholding

---

[3]The ALJ also found that ADHR had not proven by a preponderance of the evidence that Dunning had engaged in child abuse/neglect in relation to the 1988 report and concluded that the disposition of that matter shall be marked as "not indicated."

ADHR's final decision that terminated Eternal Life's participation in the Child Care Subsidy Program.

ADHR removed the action to the United States District Court for the Northern District of Alabama ("the federal district court") on May 24, 2024. On October 10, 2024, the federal district court remanded the Eternal Life parties' appeal to the circuit court.[4] The circuit court held a hearing on February 12, 2025.

On March 4, 2025, the circuit court entered a judgment reversing the ALJ's order upholding ADHR's final decision and ordering ADHR to retroactively reinstate the Eternal Life parties' participation in the Child Care Subsidy Program.[5] In support of its judgment, the circuit court made the following findings:

---

[4]The federal district court retained jurisdiction over the Eternal Life parties' federal-law and state-law claims against numerous individual defendants, none of which are parties to the present appeal.

During the pendency of the present appeal, the federal district court entered an order dismissing the Eternal Life parties' federal-law claims against the numerous individual defendants under Rule 12(b)(6), Fed. R. Civ. P. The federal district court remanded the Eternal Life parties' state-law claims against the numerous individual defendants to the circuit court.

[5]The circuit court also held that the Eternal Life parties were entitled to retroactive benefits and payments that they would have

"After careful review of [the Eternal Life parties'] Second Amended Petition for Judicial Review, [ADHR]'s Answer, the administrative record and transcript of the underlying administrative proceedings, the parties' respective briefs filed in this matter, and consideration of the oral arguments made before this Court on February 12, 2025, this Court respectfully disagrees with the [ALJ]'s findings and interpretation of the [Health and Safety] Guidelines. The key issue in the case is the interpretation of DHR's ninety (90) day rule concerning correcting deficiencies. Simply stated, the Guidelines are unclear and ambiguous.

"Therefore, it is ORDERED, ADJUDGED, and DECREED:

"1. [ADHR] is ORDERED to reinstate [the Eternal Life parties'] participation in the Child Care Subsidy Program retroactively to October 11, 2023.

"2. [The Eternal Life parties] are entitled to retroactive benefits and any payments [the Eternal Life parties] would have received that were not paid from October 11, 2023[,] through the date the Child Care Subsidy [Program] payments were reinstated to the [Eternal Life parties].

---

received had ADHR not terminated Eternal Life from participation in the Child Care Subsidy Program. ADHR argues on appeal that the Eternal Life parties are not entitled to retroactive benefits or payments because they do not have a property interest in the Child Care Subsidy Program. Because we reverse the judgment on other grounds, we pretermit discussion on this argument. See, e.g., McDaniel v. Harleysville Mut. Ins. Co., 84 So. 3d 106, 113 (Ala. Civ. App. 2011) ("Because we conclude that Harleysville's motion was without merit and that the trial court's judgment is due to be reversed, we pretermit discussion of the other grounds for reversal the McDaniels assert on appeal.").

"3. The court costs associated with these proceedings are hereby taxed to [ADHR and the numerous individual defendants].

"All other or further relief requested by any party in this case is DENIED, as this is a final Order."

(Capitalization in original; emphasis added.)

ADHR filed a timely notice of appeal from the judgment on April 14, 2025. See Ala. Code 1975, § 41-22-21 ("The appeal [of a final judgment from the circuit court under Ala. Code 1975, § 41-22-20,] shall be taken within 42 days of the date of the entry of the judgment ....").

Standard of Review

This court recently summarized the standard of judicial review of an agency's decision under § 41-22-20:

"'This court reviews a circuit court's judgment as to an agency's decision without a presumption of correctness because the circuit court is in no better position to review the agency's decision than is this court.' Affinity Hosp., LLC v. St. Vincent's Health Sys., 129 So. 3d 1022, 1025 (Ala. Civ. App. 2012).

"....

"Under the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala. Code 1975, the final decision of an agency, such as [ADHR], 'shall be taken as prima facie just and reasonable' and may be reversed or modified if the court finds that the agency action is '[u]nreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.' Ala. Code 1975, §

10

41-22-20(k). A court 'shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.' Id.

"....

"'This court has held that a decision cannot be said to be "arbitrary" where there is a reasonable justification for the decision or where the determination is founded upon adequate principles or fixed standards.' Alabama Dep't of Pub. Health v. Perkins, 469 So. 2d 651, 652 (Ala. Civ. App. 1985). '"'"'[A] decision is capricious if it is so unreasonable as to "shock the sense of justice and indicate lack of fair and careful consideration."'"'"' Alabama Dep't of Youth Servs. v. State Pers. Bd., 7 So. 3d 380, 386 (Ala. Civ. App. 2008) (quoting Alabama Dep't of Hum. Res. v. Dye, 921 So. 2d 421, 427 (Ala. Civ. App. 2005), quoting in turn Westring v. James, 71 Wis. 2d 462, 476-77, 238 N.W.2d 695, 702-03 (1976), quoting in turn Scharping v. Johnson, 32 Wis. 2d 383, 390, 145 N.W.2d 691, 695 (1966))."

Alabama Crime Victims Comp. Comm'n v. Thomas, [Ms. CL-2025-0178, Dec. 19, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025).

A court reviewing the final decision of an agency must defer to the agency's interpretation of its own rules and regulations unless the interpretation is arbitrary or unreasonable. See Alabama Medicaid Agency v. Kerby, 84 So. 3d 95, 104 (Ala. Civ. App. 2011) ("'[A]n agency's interpretation of its own regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.'"

11

(quoting <u>Ferlisi v. Alabama Medicaid Agency</u>, 481 So. 2d 400, 403 (Ala. Civ. App. 1985))).

Analysis

"[ADHR] is required to create and implement health and safety standards for all child care facilities in order to receive Child Care and Development Funds (CCDF), through the Child Care Subsidy Program." Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-20-.01. One way that ADHR ensures that a child-care facility meets its health and safety standards is to inspect the facility, identify noncompliance with ADHR's Health and Safety Guidelines, prepare a deficiency report, and discuss the deficiency report with the facility's representative. Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-20-.02(2)-(3).

ADHR argues that its interpretation of "the 90-day rule" that the circuit court found to be the "key issue in the case" is reasonable and supports the final decision to terminate Eternal Life's participation in the Child Care Subsidy Program. We agree that ADHR's interpretation of the 90-day rule is reasonable.

"The 90-day rule" refers to the 90-day period in which a child-care facility must correct any violation of ADHR's Health and Safety

Guidelines in order to remain eligible to participate in the Child Care

Subsidy Program:

> "The facility shall be ineligible to participate in the Child Care Subsidy Program if any violation of any of these Guidelines (deficiency) is not corrected within ninety (90) days of the discovery of the deficiency. In such instances the facility will remain ineligible to participate until such time that no deficiencies exist as verified by [ADHR]'s representative."

Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-20-.02(4).

As we have stated, because the question at issue here is one of

interpretation of ADHR's own rules and regulations, a reviewing court

must defer to ADHR's interpretation unless it is unreasonable or

arbitrary. See Kerby, 84 So. 3d at 104; see also § 41-22-20(k).

ADHR interprets the 90-day rule to mean that, after a deficiency is

discovered and the 90-day period begins, a child-care facility must have

zero deficiencies at the end of the 90-day period to remain eligible for the

Child Care Subsidy Program. According to ADHR, the 90-day period does

not reset every time a new deficiency is discovered. During the

administrative hearing, Rozell testified that, based on ADHR's

interpretation of the 90-day rule, Eternal Life had 90 days from the

initial inspection date of June 15, 2023, "to become overall in compliance

13

with the evaluation ...." Swanner also testified about how ADHR interprets the 90-day rule during the administrative hearing:

> "For the 90 days, anytime [ADHR] go[es] out to a facility and we find any kind of noncompliance and that facility accepts childcare subsidy ... that starts the 90-day window. ... And the facility has that 90-day window to make any corrections necessary to come into compliance in order to be eligible to stay on childcare subsidy.
>
> "So it starts at the -- whatever that first visit is, that first noncompliance. It doesn't matter what kind of visit that is. It could be a visit like this where we're starting a [license] renewal. ... So any time we see a noncompliant [sic], that starts that 90 days ....
>
> "....
>
> "The only time a 90-day period would start over is if [the child-care facility] were in compliance. So [it] would have zero deficiencies."

Applying its interpretation of the 90-day rule to the facts in this case, ADHR concluded that Eternal Life was ineligible to participate in the Child Care Subsidy Program; Eternal Life continued to have deficiencies 90 days after ADHR's initial inspection. Accordingly, ADHR terminated Eternal Life from the Child Care Subsidy Program.

The circuit court disagreed with ADHR's interpretation of the 90-day rule that was implicitly adopted by the ALJ in his order. In the judgment, the circuit court found that "the Guidelines are unclear and

14

ambiguous" and "respectfully disagree[d]" with the ALJ's "findings and interpretation of the Guidelines."[6]

We agree with the circuit court that the 90-day rule is ambiguous and appears to contradict itself. On one hand, the 90-day rule appears to state that a child-care facility has 90 days from the discovery of a deficiency to correct that deficiency but, in the interim, will remain eligible to participate in the Child Care Subsidy Program. Ala. Admin. Code (Dep't Hum. Res.), r. 660-5-20-.02(4). On the other hand, the 90-day rule clearly states that "the facility will remain ineligible to participate [in the Child Care Subsidy Program] until such time that no deficiencies exist ...." Id.

ADHR's interpretation of the 90-day rule resolves the ambiguity and apparent conflict by concluding that a child-care facility has 90 days to correct all deficiencies, so that no deficiencies exist, to remain eligible to participate in the Child Care Subsidy Program. As ADHR points out in its brief, if ADHR interpreted the 90-day rule to require a separate 90-day period for each deficiency, a child-care facility could be noncompliant

---

[6]ADHR's Health and Safety Guidelines contain the same language regarding "the 90-day rule" as Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-20-.02(4).

15

with ADHR's Health and Safety Guidelines in perpetuity. Such an interpretation would not align with ADHR's obligation to ensure that our state's child-care facilities meet and maintain ADHR's Health and Safety Guidelines. Even if the circuit court concluded that ADHR's interpretation of the 90-day rule was not as reasonable as some other interpretation, our caselaw requires that ADHR's interpretation of its own rules and regulations, if reasonable, must stand. Kerby, 84 So. 3d at 104.

## Conclusion

Based on the foregoing, we conclude that ADHR's interpretation of the 90-day rule is reasonable. Accordingly, we reverse the circuit court's judgment and remand the cause to the circuit court to enter an order affirming the ALJ's order upholding ADHR's final decision in accordance with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Edwards and Hanson, JJ., concur.

Fridy, J., dissents, without opinion.